827 P.2d 152

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Robert S. ORTEGA, Defendant– Appellant.**

**No. 12952.**

Court of Appeals of New Mexico.

Jan. 14, 1992.

Tom Udall, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

C. Barry Crutchfield, Templeman and Crutchfield, Lovington, for defendant-appellant.

## OPINION

BIVINS, Judge.

Convicted of battery upon a peace officer contrary to NMSA 1978, Section 30–22–24 (Repl.Pamp.1984), Defendant appeals. He raises two issues. First, Defendant claims that since the uncontradicted evidence shows that he never touched the person of the peace officer—only grabbed or knocked a flashlight out of the officer's hand—substantial evidence does not support a conviction of battery upon a peace officer. Second, and closely related to the first issue, Defendant claims that the trial court erred in giving a jury instruction defining the crime of battery upon a peace officer to include knocking or taking of a flashlight from the hand of the officer. We answer these contentions as follows: First, there was direct evidence from the officer that blows were exchanged between Defendant and the officer which, if believed, would support direct touching or application of force to the person of the peace officer. Second, even if the jury did not believe that there was direct touching or application of force by the exchange of blows, nevertheless, the grabbing or knocking of the flashlight from the hand of the officer, which Defendant admits he did, suffices as intentional touching or application of force to the person of the peace officer. The instruction correctly described the crime. Therefore, we affirm Defendant's conviction.

On October 12, 1989, at approximately 8:30 p.m., Officer Greg Adams of the Hobbs Police Department, accompanied by rookie Officer Mark Hargrove, responded to a call of a disturbance at the Greystoke Lounge. As the two officers arrived at the lounge, they noticed a silver 1982 Firebird stopped at a light adjacent to the lounge, headed in the opposite direction from which the officers were travelling. An individual in the parking area of the lounge pointed at the Firebird. The officers turned their unit around and stopped the car for what Officer Adams described as an investigative stop.

Noticing that the driver of the vehicle appeared to be intoxicated, Officer Adams took the driver, later identified as Mark Alvarado, to a flat concrete slab for a field sobriety test. At that time, Officer Hargrove was talking to the other two occupants of the vehicle, one of whom was Defendant. Officer Adams overheard Defendant shouting obscenities at Officer Hargrove and went over to assist, since Officer Hargrove was inexperienced.

As he approached, Officer Adams told Defendant to calm down and that if he did not cease shouting obscenities, he would be arrested for disorderly conduct. Officer Adams had a flashlight in his hand. Officer Adams testified that Defendant grabbed the flashlight, pulled it out of his

hand and tried to hit the officer with his right fist. The officer said that he was able to knock the flashlight out of Defendant's hand. "At that point several blows between Mr. Ortega and myself were exchanged and then I was jumped by the other two occupants of the vehicle." Officer Adams described the blows as "hitting each other with our fists."

On cross-examination, defense counsel questioned Officer Adams concerning previous testimony that he had given a year earlier at the preliminary hearing. When questioned as to whether he testified that Ortega struck him, the officer said he did not recall his earlier testimony but reiterated, "I believe he did, yes sir." Defense counsel was then able to obtain a concession from Officer Adams that he, at the time of trial, was making an assumption that blows were exchanged with Defendant. "That's the way I had it written in my report," he testified, referring to a police report filed shortly after the incident.

The officer also conceded that it was possible that when Defendant grabbed the flashlight, it was one or both of the Alvarado brothers who jumped him. When pressed as to whether the officer could remember, as of the time of trial, whether Defendant actually did more than grab the flashlight, the officer agreed he could not.

On redirect examination, the prosecutor attempted to rehabilitate the officer's prior direct testimony regarding the exchange of blows. In response to questions, Officer Adams said that he did make a report, that it was accurate at the time it was made, and that he presently did not remember all the details of the occurrence. When the prosecutor inquired again if blows were exchanged, an objection was lodged and a bench conference held. The bench conference is not audible but the prosecutor then proceeded with his questions, at which time the officer answered that, according to his report, blows were exchanged between himself and Defendant. The judge admonished the jury to disregard the answer. Officer Adams then said he and Defendant may have fought but that he was not sure when he was testifying.

■ SCRA 1986, 11–803(E) permits the reading into evidence of a memorandum or record concerning a matter about which a witness once had knowledge, but now has insufficient recollection, when it is shown that the record was made or adopted by the witness when the matter was fresh in his memory. While it may have been an error to refuse to allow the officer to read what was in his report, nevertheless, the trial court's admonition to the jury did not affect the officer's prior direct testimony regarding the exchange of blows. That evidence came in without objection. If the jury believed that testimony, then Defendant's argument on appeal fails because there was direct evidence of intentional touching or application of force to the person of Officer Adams. Even if the jury did not believe that blows were exchanged, it would nevertheless have been justified in convicting based upon Defendant's own admission that he grabbed or knocked the flashlight out of the hand of the officer.

■ Section 30–22–24(A) states: "Battery upon a peace officer is the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Defendant contends that the knocking of the flashlight from the officer's hand did not constitute a battery under Section 30–22–24(A) because there was never any actual contact between Defendant and Officer Adams. Further, Defendant argues that the statute should be construed to require a direct touching or application of force to Officer Adams' person.

New Mexico law provides ample guidance to this court in construing a statute.
> The cardinal rule of statutory construction is that there is no need to construe an unambiguous statute. Instead, the reviewing court will give a literal meaning to such a statute to give effect to its plain meaning. However, a court will not give a statute a literal reading when to do so leads to absurd or unreasonable results * * *.

*State v. Wyrostek*, 108 N.M. 140, 142, 767 P.2d 379, 381 (Ct.App.1988) (citations omit-

ted), *cert. denied,* 108 N.M. 115, 767 P.2d 354 (1989). Defendant's reading of Section 30–22–24(A) would permit a person to actually touch or apply force to something closely associated to the person of a peace officer without violating the statute. We do not read the statute so narrowly.

Although the issue Defendant raises is one of first impression in New Mexico, commentaries and case law from other jurisdictions provide support for the result we reach. Commentators explain that battery does not require actual physical contact between the defendant and the victim. In W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 9, at 39–40 (5th ed. 1984), it is stated:

> Protection of the interest in freedom from intentional and unpermitted contacts with the plaintiff's person extends to any part of the body, or to anything which is attached to it and practically identified with it. Thus, if all other requisites of a battery against the plaintiff are satisfied, contact with the plaintiff's clothing, or with a cane, a paper, *or any other object held in the plaintiff's hand,* will be sufficient. * * * The interest in the integrity of person includes all those things which are in contact or connected with the person. [Emphasis added and footnotes omitted.]

Similarly, in 6A C.J.S. *Assault & Battery* § 70, at 440–41 (1975), it is stated:

> It is essential to the offense of battery ... that there be a touching of the person of the prosecutor, or of something so intimately associated with, or attached to, his person as to be regarded as a part thereof. * * *
>
> Accordingly, battery may consist in the ... snatching or wresting something from his possession. * * * The contact may have been with the clothes of the prosecutor or with something carried by him. [Footnotes omitted.]

Defendant contends that the application of authority relating to common law battery concepts would be erroneous. However, "[t]he elements of civil and criminal assault and battery are essentially identical." 6A C.J.S. *Assault & Battery* § 2 at

319 (1975); *see also Virgin Islands v. Stull,* 280 F.Supp. 460, 462 (D.C.V.I.1968). The elements of Section 30–22–24(A) are substantially similar to those stated in the *Restatement (Second) of Torts* § 18 (1965), which provides:

> (1) An actor is subject to liability to another for battery if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (b) an offensive contact with the person of the other directly or indirectly results.

Criminal law commentators also suggest that physical contact between the defendant and the victim is not required. *See generally* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.15, at 303 (1986) (force in criminal battery need not be applied directly to the body of the victim; it may be applied indirectly.) In addition, case law from other jurisdictions supports the proposition that there need not be direct touching of the victim's person in order for a battery to occur. Touching something intimately connected with the victim's body is sufficient. In *Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 629 (Tex.1967), for example, cited by the State in this action, the defendant snatched a patron's dinner plate from his hands without touching the patron. The court held that the intentional grabbing of the patron's plate constituted a battery. The court stated that "[t]he intentional snatching of an object from one's hand is as clearly an offensive invasion of his person as would be an actual contact with the body." *Id.; see also Stokes v. State,* 233 Ind. 10, 115 N.E.2d 442, 443 (1953) (where defendant fired gun, bullet perforated victim's necktie and creased victim's shirt, defendant's action constituted battery); *Morgan v. Loyacomo,* 190 Miss. 656, 1 So.2d 510, 511 (1941) (defendant's action of forcibly seizing package from under customer's arm constituted battery); *cf. State v. Gammil,* 108 N.M. 208, 210, 769 P.2d 1299, 1301 (Ct.App.1989) (discuss-

ing merger, held that aggravated battery, consisting of grabbing victim's purse and then spinning and throwing her to the ground, merged with robbery).

We reject Defendant's literal reading of the statute and hold that the word "person" as used in New Mexico's battery upon a peace officer statute includes anything intimately connected with person. Accordingly, the flashlight which Officer Adams carried was part of Officer Adams' "person" as contemplated by Section 30–22–24(A). That is the way the trial court read the statute and we agree. It would be strange, indeed, if one could with impunity grab an item in a peace officer's hand, such as a night stick, flashlight, or weapon, spin the officer around, causing the officer to fall to the ground, or even worse, fall from a building, out a window, into a mine shaft, off a ship, or out of an airplane, and then claim no battery occurred because, "I never touched his person."

Not only is the safety of a peace officer at stake, we believe the legislature, by enacting Section 30–22–24, intended to avoid a challenge to the officer's authority. The case before us illustrates that purpose clearly. After the flashlight was knocked from Officer Adams' hand, Defendant's companions jumped Officer Adams. Defendant then fought with Officer Hargrove. Testimony reflects that the assistance of several citizens was required to subdue Defendant and his companions.

The trial court's jury instruction stated, in part, that the offense of battery upon a peace officer could be proved by showing that Defendant "knocked or took a flashlight from Greg Adams; or hit Greg Adams." Defendant contends that the jury instruction was erroneous. Based on the discussion above, the jury was properly instructed that it could find Defendant guilty if it found that Defendant knocked or took the flashlight out of Officer Adams' hand. *See, e.g., State ex rel. State Highway Dep't v. Strosnider,* 106 N.M. 608, 612, 747 P.2d 254, 258 (Ct.App.1987) (party entitled to jury instruction on correct legal theories of its case if supported by evidence); *cf. State v. Isiah,* 109 N.M. 21,

31–32, 781 P.2d 293, 303–04 (1989) (no error in refusing instruction which incorrectly states applicable law). We affirm Defendant's conviction.

IT IS SO ORDERED.

ALARID, C.J., and MINZNER, J., concur.