1997 NMSC 022

937 P.2d 492

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Danny PADILLA, Defendant–Appellant.**

No. 23100.

Supreme Court of New Mexico.

March 17, 1997.

T. Glenn Ellington, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

Tom Udall, Attorney General, Ann Harvey, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

FRANCHINI, Chief Justice.

(1) Danny Padilla was convicted on four counts of battery upon a peace officer pursuant to NMSA 1978, Section 30–22–24 (Repl. Pamp.1994), and sentenced to one and one-half years on each count. Because Padilla was found to be a habitual offender based on three prior felony convictions, each sentence was enhanced pursuant to NMSA 1978, Section 31–18–17(D) (Repl.Pamp.1994) (mandating enhanced sentences for habitual offenders), resulting in four sentences of nine and one-half years, to be served concurrently. Padilla, appealed to the Court of Appeals

from his convictions on three of the four counts of battery.[1]

(2) The Court of Appeals certified the appeal to this Court pursuant to NMSA 1978, Section 34–5–14(C)(2) (Repl. Pamp 1996) (providing for certification of issues of substantial public interest). In this appeal, we consider whether the legislature contemplated that rude, insolent, or angry acts such as committed by Padilla in this case are punishable as a violation of Section 30–22–24(A). We hold that Section 30–22–24(A) includes as unlawful only those acts that physically injure officers, that actually harm officers by jeopardizing their safety, or that meaningfully challenge their authority. Because the jury was not instructed on unlawfulness in these terms, we reverse.

(3) Padilla, an inmate at the Curry County Detention Center, was locked in his cell after he engaged in a scuffle with another inmate. While confined to his cell, Padilla proceeded to kick the door. For Padilla's safety, the jailers decided to transfer him to solitary confinement in a protective padded cell. To accomplish the transfer with minimal disruption, the jailers decided to lock down all the inmates in that section of the jail. With the exception of one inmate, all complied with the lock-down order. That one inmate, Ivy Leslie, refused to go into his cell. While three jailers were attempting to restrain Leslie and force him into his cell, they found themselves near Padilla's cell. Through the bars of his locked cell, Padilla squirted baby oil and threw water on the three jailers. No jailer was injured, and the jailers successfully subdued Leslie and placed him in his cell. Several of the jailers testified that Leslie was more difficult to restrain because of the slick baby oil, and one jailer testified that the baby oil ruined his uniform.

(4) The legislature has defined battery upon a peace officer as "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Section 30–22–24(A). This crime is classified as a

fourth-degree felony, punishable by eighteen months imprisonment. NMSA 1978, § 31–18–15(A)(6) (Repl.Pamp.1994). Padilla argues that squirting baby oil and throwing water on an officer is insufficient to support a conviction for battery on a peace officer because the officers' safety was not endangered and their authority was not challenged as required under *State v. Ortega*, 113 N.M. 437, 441, 827 P.2d 152, 156 (Ct.App.1992). The State argues that because the statute does not expressly require injury or harm, the rude, insolent, or angry contact here constitutes a violation of the statute.

(5) In *Ortega*, the Court of Appeals considered whether battery upon a peace officer occurred when the defendant "grabbed or knocked a flashlight out of the officer's hand." 113 N.M. at 438, 827 P.2d at 153. In holding that direct physical contact was not required, the Court of Appeals stated that Section 30–22–24 was enacted to protect "the *safety* of … peace officer[s]" and "to avoid a challenge to [their] *authority.*" *Id.* at 441, 827 P.2d at 156 (emphasis added). *Ortega* implies that not every rude, insolent, or angry touching, no matter how harmless, is punishable as a felony. We think the Court of Appeals got it right. The purpose of this statute is to protect the *safety* and *authority* of peace officers. The legislature has not made rude conduct a felony; it has prohibited *unlawful* touching done in a rude, angry, or offensive manner.

(6) In effect, the State urges this Court to graft the analysis of civil battery from tort law on to the construction of this criminal battery statute. *See Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967) ("Personal dignity is the essence of an action for [civil] battery."). To read this statute as the State recommends would mean that the legislature intended to punish, for example, a disgruntled pedestrian's act of rudely jerking a ticket from an officer's hand as a felony with a basic sentence of eighteen months imprisonment. It is absurd to think the legislature intended to make felonious

---

1. In this appeal, Padilla does not challenge his conviction on Count IV, which was supported by evidence that he had lunged toward and tackled an officer.

mere affronts to personal dignity.[2] We read statutes to avoid "absurd or unreasonable results." *Ortega*, 113 N.M. at 439, 827 P.2d at 154 (quoting *State v. Wyrostek*, 108 N.M. 140, 142, 767 P.2d 379, 381 (Ct.App.1988)).

■ (7) The *Ortega* construction of the statute is also supported by an examination of the statutory definition of aggravated battery on a peace officer. NMSA 1978, § 30–22–25(B) (Repl.Pamp.1994). Section 30–22–25(B) defines aggravated battery on a peace officer as "inflicting an injury to the peace officer which is not likely to cause death or great bodily harm, but does cause *painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body.*" *Id.* (emphasis added). This is also punished as a fourth-degree felony with eighteen months imprisonment. § 30–22–25(B). The legislature must have had some reason for equally punishing the two crimes. The only logical explanation we find for punishing a rude, insolent, or angry touching as severely as intentional behavior resulting in potentially serious bodily harm is that the legislature intended to punish conduct involving actual injury, actual threat to safety, or meaningful challenge to authority.

■ (8) For the essential statutory element of unlawfulness, the court here instructed the jury only that the State must prove Padilla "acted in a rude, insolent or angry manner," which clearly does not describe the element of harm to the safety or authority of the officers. The State asserts that "a restless atmosphere had [escalated] in the jail to the point where at least one inmate had rebelled against the officers." Under these circumstances, the State maintains, a jury could find beyond a reasonable doubt that Padilla's acts exacerbated a serious situation in the jail and created unnecessary danger for or jeopardized the authority of the detention officers. We agree. It is fundamental error, however, to fail to instruct on an essential element of a crime

unless that element is undisputed (i.e., by concession it is not at issue) and indisputable (i.e., the jury undoubtedly would have so found). *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992); *State v. Osborne*, 111 N.M. 654, 661–62, 808 P.2d 624, 631–32 (1991).

(9) While the committee commentary to the uniform jury instruction for battery, Rule 14–320 NMRA 1997, states that "[t]he statutory element of unlawfulness is covered by the language of this instruction requiring that the defendant act in a rude, insolent or angry manner," this proposition does not withstand scrutiny for the reasons stated above. Accordingly, we reverse the judgment of conviction under Counts I, II, and III and remand for a new trial under proper instructions should the State choose to exercise its prosecutorial discretion to do so.

(10) Our construction of this statute does not leave the State without any means to punish merely rude, insolent, or angry behavior towards a corrections officer. The Curry County Detention Center has established rules for penalizing an inmate who violates the Center's rules. *See* Curry County Detention Center's Inmate Handbook; *see also* NMSA 1978, § 33–3–8 (Repl.Pamp.1990) (requiring jail administrators to establish rules for the punishment of prisoners who violate jail rules). The Inmate Handbook characterizes conduct such as throwing food, cups, bowls, or trash as a "Minor Infraction," and it sets forth various administrative penalties to punish this conduct. Loss of good time and television or commissary privileges are some disciplinary measures that are appropriate for insubordinate behavior. *See also Rust v. Grammer*, 858 F.2d 411, 414 (8th Cir.1988) (holding that serving only cold sandwiches and tap water as disciplinary measure for throwing food at guards justified to curtail disruptive situation); *Bono v. Saxbe*, 527 F.Supp. 1187, 1191 (S.D.Ill.1981) (affirming use of segregation to curtail inmates from throwing food).

---

**2.** The Model Penal Code defines Padilla's act as disorderly conduct or harassment and punishes it as a petty misdemeanor. Model Penal Code § 250.2, at 324–25; § 250.4, at 359–60. This carries a thirty-day sentence. *Id.* § 6.08, at 178. Under the Code, offensive touching is not sufficiently serious to be made a felony, except in the case of sexual assaults as provided elsewhere in the Code. We note that the Legislature has likewise penalized sexual contact as a separate crime. *See* NMSA 1978, §§ 30–9–12, –13 (Repl. Pamp.1994).

(11)   We hold that Section 30–22–24 requires proof of injury or conduct that threatens an officer's safety or meaningfully challenges his or her authority, and that the jury must be so instructed if a new trial is prosecuted under Counts I, II, and III.   It is important to note, however, that our decision does not change Padilla's sentence.   Because Padilla's other convictions for assault (Count V) and battery (Count IV) remain in force, and because they are enhanced by his habitual offender status, Padilla must still serve his sentence of nine and one-half years.

(12)   **IT IS SO ORDERED.**

BACA, MINZNER and SERNA, JJ., concur.