The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: March 19, 2026

**No. A-1-CA-41018**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CARL PACHECO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Supervising Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}     After altercations with a hotel worker and a responding police officer in 2021, Defendant Carl Pacheco was convicted of battery upon a peace officer, a felony, contrary to NMSA 1978, Section 30-22-24 (1971); resisting, evading, or obstructing an officer, a misdemeanor, contrary to NMSA 1978, Section 30-22-1 (1981); and battery, a petty misdemeanor, contrary to NMSA 1978, Section 30-3-4 (1963). Defendant was sentenced to four years less one day. Defendant appeals all three convictions. Defendant's principal argument on appeal is that his act of spitting on a police officer is insufficient to sustain his conviction for battery on a peace officer. Specifically, Defendant contends that because his actions did not "actually interfere" with the officer's ability to carry out his duties, his conviction cannot stand. The jury instruction for battery on a peace officer, however, requires no such interference to qualify as a "meaningful challenge to the authority." UJI 14-2211 NMRA (element 5). And this Court has specifically, and repeatedly, refused to "define the legal boundaries of a 'meaningful challenge' to authority." *See State v. Jones*, 2000-NMCA-047, ¶ 14, 129 N.M. 165, 3 P.3d 142; *see also State v. Martinez*, 2002-NMCA-036, ¶ 38, 131 N.M. 746, 42 P.3d 851 (reiterating that "it is up to the jury to decide whether the act of spitting also constituted a meaningful challenge to authority"). Because Defendant does not advance a fundamental error challenge to

the jury instruction for battery on a peace officer, and, critically, does not ask us to revisit this Court's prior precedent, we again adhere to this precedent and decline to adopt a specific definition of "meaningful challenge to authority." We conclude there was sufficient evidence to sustain Defendant's battery on a peace officer conviction under the jury instruction given. Having determined that Defendant's remaining claims of error are not viable, we affirm.

**BACKGROUND**

{2}     At Defendant's 2023 trial, Alejandra Fernandez testified that while working alone as a night auditor at a hotel, she saw Defendant loitering outside the entrance. Ms. Fernandez testified that when she asked Defendant to either enter his room or leave, Defendant began screaming at her, threw a taco at her, grabbed her hair, kicked her in the face, and left. Not seriously injured, but scared, she called police.

{3}     Officer Brady Griffith arrived to find Defendant standing outside an apartment complex next to the hotel. Officer Griffith asked Defendant to stand on the sidewalk, and Defendant complied. When asked what was going on, Defendant replied, "Nothing," said that the officer had "no right to do this," and began slowly walking away a few moments later. Officer Griffith told Defendant to stop, that he was "now . . . not free to go," and to sit down or Officer Griffith would make Defendant sit down. Defendant continued to slowly walk away and repeat that he was "not doing anything wrong," when Officer Griffith grasped Defendant's arm.

At first, Defendant slowly tried to pull free from Officer Griffith, but when Officer Griffith continued to hold onto him, Defendant began yelling and tightening his arms so they would be difficult to bend. Despite this resistance, Officer Griffith handcuffed Defendant. Officer Griffith and two other officers then escorted Defendant to a police vehicle. At trial, Officer Griffith testified that on the way to the police vehicle, Defendant spit on the side of his face. Once detained in the back of Officer Griffith's vehicle, Defendant continued to yell that the police were violating his rights and spit several more times.

{4} Defendant advances three arguments for reversal on appeal: (1) insufficient evidence supported his conviction of battery on a peace officer; (2) the State improperly vouched for the credibility of witnesses during its closing argument; and (3) Defendant's trial counsel failed to advise Defendant of a plea offer, constituting ineffective assistance of counsel. Additionally, veiled within Defendant's sufficiency argument is an underdeveloped challenge to the legal sufficiency of the jury instructions. We address this argument before reaching the others.

**DISCUSSION**

**I.      Defendant Did Not Preserve Any Challenge to the Jury Instruction or Adequately Raise Any Such Challenge on Appeal**

{5} At trial, the jury was given the following instruction for battery on a peace officer:

For you to find [D]efendant guilty of battery upon a peace officer as charged in Count 1, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. [D]efendant intentionally touched or applied force to [Officer] Griffith by spitting on him;

2. [D]efendant's act was unlawful;

3. At the time, [Officer] Griffith was a peace officer and was performing the duties of a peace officer;

4. [D]efendant knew [Officer] Griffith was a peace officer;

5. [D]efendant's conduct caused an actual threat to the safety of [Officer] Griffith or a meaningful challenge to the authority of [Officer] Griffith;

6. [D]efendant acted in a rude, insolent, or angry manner.

*See* UJI 14-2211. Within this jury instruction are two alternative bases for conviction: Defendant must have either "caused an actual threat to the safety" or a "meaningful challenge to the authority" of the officer. *See id.* Defendant argues that one of these two bases for conviction, meaningful challenge to authority, is wholly "untethered to any legal requirements." Defendant states generally that "the jury instruction in this case failed to provide parameters for such conduct" and that "it is imperative that the jury instructions properly communicate the law of the crime to the jury." Defendant offers a definition of meaningful challenge to authority—that the conduct actually interfered with the officer's ability to carry out their duties—and implicitly asks this Court to adopt it.

{6} However, Defendant neither objected to the jury instruction at trial nor asks this Court to review the jury instruction for fundamental error on appeal. *See State v. Ocon*, 2021-NMCA-032, ¶¶ 7-12, 493 P.3d 448 (setting out the two-step fundamental error standard of review for unpreserved jury instruction claims and providing that "[f]undamental error [only] exists if it would shock the court's conscience, . . . either because of the obvious innocence of the defendant, or because a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused" (alteration, internal quotation marks, and citations omitted)). We therefore decline to address the legal sufficiency of the jury instruction or review it for fundamental error. *See State v. Benally*, 2001-NMSC-033, 131 N.M. 258, 34 P.3d 1134 (reviewing the defendant's challenge to jury instructions for fundamental error when the defendant raised the issue on appeal); *State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 ("[The defendant] nowhere argues that fundamental error or plain error occurred or how either error occurred. We normally refuse to step into review when not invited by the appellant to do so.").

{7} Critically, addressing the legal sufficiency of jury instructions would require us to reconsider and potentially adjust our precedent, without an explicit request by any party to do so—something we may not do. *See State v. Riley*, 2010-NMSC-005, ¶ 40, 147 N.M. 557, 226 P.3d 656 (Chavez, C.J., specially concurring) ("[S]tare

decisis prevents [appellate courts] from overruling precedent where the parties have not specifically argued the issue."), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, 306 P.3d 426. To date, this Court has intentionally refused to "define the legal boundaries of a 'meaningful challenge' to authority." *See Jones*, 2000-NMCA-047, ¶ 14. Instead, we have explained that determining whether an act is a "meaningful challenge to authority" requires "knowledge of the context in which the battery arose," and that "this question is best left to juries to decide using their collective common sense and wisdom as a guide." *Id.*; *see Martinez*, 2002-NMCA-036, ¶ 38 ("We specifically decline[] to define what types of behavior will be sufficient to constitute a meaningful challenge to authority and what will not. Instead, we stress[] that whether or not a defendant's conduct constitute[s] a meaningful challenge [will] depend on the context in which the battery occurred." (citation omitted)). In view of this precedent, this Court has rejected the specific proposed definition Defendant advances, requiring actual interference with the officer's ability to carry out their duties, in numerous nonprecedential opinions. *See, e.g.*, *State v. Silverfox*, A-1-CA-38098, mem. op. ¶¶ 6, 8-10 (N.M. Ct. App. Oct. 12, 2022) (nonprecedential); *State v. Quinn*, A-1-CA-38564, mem. op. ¶¶ 5-7, 10 (N.M. Ct. App. Mar. 1, 2022) (nonprecedential); *State v. Loring*, A-1-CA-39607, mem. op. ¶ 5 (N.M. Ct. App. June 21, 2022) (nonprecedential). We again decline to adopt

Defendant's proposed definition of meaningful challenge to authority as contrary to the mandates in *Jones*.

{8}    While we adhere to controlling precedent that whether a "meaningful challenge" to authority occurred is a question best left to juries, *see Jones*, 2000-NMCA-047, ¶ 14, we are troubled by the definitional and applicational void into which juries must peer to arrive at an answer as to when a defendant's act of spitting upon an officer satisfies the term in question. We thus discuss our jurisprudence to date on what constitutes a meaningful challenge to the authority of police officers, especially in the context of spitting cases, to once more flag the issue for our Supreme Court and to request further guidance for juries.[1] *See, e.g.*, *State v. Valdez*, A-1-CA-36815, mem. op. ¶ 24 (N.M. Ct. App. Dec. 3, 2019) (nonprecedential) (Ives, J., dissenting) (dissenting in part because "[t]he majority does not articulate a reasonable analysis that the jury could have relied on to conclude that [the d]efendant's [act of throwing urine on a corrections officer's shoe and pants from under a cell door] did, in fact, cause a meaningful challenge").

{9}    This Court has held that "the act of spitting will not automatically provide a basis for conviction for [battery on a peace officer]," but instead that it is up to the

---

[1]This is not to say that in a future case—where the jury instruction issue is preserved or fundamental error is argued, and the arguments presented are either in line with *Jones* or explicitly explain why the dictates of stare decisis must yield—this Court could not address the issue.

jury to "decide whether the act of spitting also constituted a meaningful challenge to authority." *Martinez*, 2002-NMCA-036, ¶ 38. Nonetheless, we remain concerned that juries must decide whether an act of spitting constitutes a meaningful challenge to authority in a vacuum, given that the guidance existing in our case law has yet to be included in the uniform jury instruction for battery on a peace officer. Juries have been left on their own to determine the legal definition of the term meaningful challenge to authority.

{10} We therefore take the time to survey the aforementioned guidance as to what this term embodies. In *State v. Padilla*, 1997-NMSC-022, ¶ 6, 123 N.M. 216, 937 P.2d 492, our Supreme Court explained that in passing Section 30-22-24, our battery upon a peace officer statute, the Legislature did not intend to punish "mere affronts to personal dignity," giving as an example "a disgruntled pedestrian's act of rudely jerking a ticket from an officer's hand." *Padilla*, 1997-NMSC-022, ¶ 6. The Court went so far as to say that making such conduct a felony with a basic sentence of eighteen months imprisonment would be "absurd." *Id.* The Court next compared the statute of battery on a peace officer with the statute of aggravated battery on a peace officer, noting that while both carried the same punishment, the latter requires the "painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body." *Id.* ¶ 7 (emphasis, internal quotation marks, and citation omitted); NMSA 1978, § 30-22-25(B) (1971). The Court explained that

the only "logical explanation . . . for punishing a rude, insolent, or angry touching as severely as intentional behavior resulting in potentially serious bodily harm is that the [L]egislature intended to punish conduct involving actual injury, actual threat to safety, or meaningful challenge to authority." *Padilla*, 1997-NMSC-022, ¶ 7. For conduct to count as battery on a peace officer, then, our Supreme Court held that "Section 30-22-24(A) includes as unlawful only those acts that physically injure officers, that actually harm officers by jeopardizing their safety, or that meaningfully challenge their authority." *Padilla*, 1997-NMSC-022, ¶ 2. In sum, "[t]he [L]egislature has not made *rude* conduct a felony." *Id.* ¶ 5 (emphasis added).

{11}     This conclusion seems to sketch a kind of spectrum of offense. At one end is behavior our Supreme Court has explicitly designated as undeserving of a felony: rude touching that is harmless, or, put another way, mere affronts to personal dignity. *Id.* ¶ 6. At the other end is aggravated battery, a solid felony because of "painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body." *Id.* ¶ 7 (emphasis, internal quotation marks, and citation omitted); § 30-22-25(B). Because the Legislature punishes battery on a peace officer the same as aggravated battery on a peace officer, it is not difficult to infer that for behavior to qualify as battery on a peace officer, it must be more similar to aggravated battery than to mere affronts to personal dignity, the other end of the spectrum. The Court embodied this idea when it held that the jury instruction at issue

in *Padilla*, which in the context of Section 30-22-24 only mentioned "rude, insolent or angry" behavior and made no mention of threats or challenges to authority, failed to instruct on an essential element of a crime and was thus improper. *Padilla*, 1997-NMSC-022, ¶ 8.

{12} Following *Padilla*, jury instructions were adjusted and committee commentary and use notes were added explaining that Section 30-22-24 required "proof of injury or conduct that threatens an officer's safety or meaningfully challenges [their] authority" and that "the jury must be so instructed." *Padilla*, 1997-NMSC-022, ¶ 11; *see* UJI 14-2211 comm. cmt.; UJI 14-320 NMRA comm. cmt.; UJI 14-2201 NMRA use note 4; UJI 14-132 NMRA comm. cmt.; UJI 14-2203 NMRA use note 5. Although the jury instruction for battery on a peace officer was amended to reflect this holding, it omitted the words "actual" when describing a threat to an officer's safety and "meaningful" when describing a challenge to authority. *Jones*, 2000-NMCA-047, ¶ 7.

{13} Several years later, this Court corrected the "inexplicable" omission of "actual" and "meaningful[]" and required both be added to the jury instruction so that it more closely reflected *Padilla*'s holding. *Id.* ¶¶ 7-8. In *Jones*, this Court explained that *Padilla* required the jury instruction to "reflect the [s]tate's burden of proof, which includes an 'actual injury, actual threat to safety, or meaningful challenge to authority.'" *Jones*, 2000-NMCA-047, ¶ 9 (quoting *Padilla*, 1997-

NMSC-022, ¶ 7). *Jones* confirmed that "the language of our battery upon a peace officer statute does not cover acts *intending* to injure, insult or provoke, or proscribe applications of force designed to embarrass the victim," and that New Mexico's statute "demand[ed] more." *Id.* ¶ 13 (emphasis added) (internal quotation marks and citations omitted).

{14}     *Jones* emphasized that the jury instruction must include "[l]anguage focusing on context" that directs the jury "to look to the surrounding circumstances to determine whether a battery is merely offensive in the ordinary civil sense, or whether it rises to the level of 'unnecessary danger' envisioned by . . . *Padilla*." *Jones*, 2000-NMCA-047, ¶ 10; *see Padilla*, 1997-NMSC-022, ¶ 8. And although both cases observed that the "purpose of the battery upon a peace officer statute is to protect the safety and authority of peace officers," *Jones* also reminds us that peace officers are trained to have a "higher tolerance for offensive conduct." 2000-NMCA-047, ¶¶ 6, 11 (internal quotation marks and citation omitted); *see Padilla*, 1997-NMSC-022, ¶ 5. Said this Court in *Jones*: "[T]he [L]egislature is aware that police are held to a higher standard when it comes to defining unlawful conduct punishable as a felony" and that "[o]ur Supreme Court's construction of Section 30-22-24, as expressed in *Padilla*, reflects this higher tolerance expected of police officers with respect to minor, technical batteries." *Jones*, 2000-NMCA-047, ¶ 11 (internal quotation marks and citations omitted). Furthermore, the holding of *Jones*

is in line with "the majority rule that imposes penal sanctions only for those batteries resulting in actual physical injury," specifically because the battery upon a peace officer statute does not reflect the intent that "spitting upon a peace officer [is] a felony" regardless of actual injury. *Id.* ¶ 13. *But see id.* ¶¶ 15, 18 (providing that the act of spitting, "could constitute a 'meaningful challenge' to their authority, depending upon the context").

{15}     In light of all this, the *Jones* Court held that the jury instruction must include "actual threat" rather than just "threat," and "meaningful challenge to authority" rather than just "challenge," so that juries better understand the state's burden to "prove more than just a mere, incidental challenge to authority." *Id.* ¶¶ 16-17. Since *Jones*, this Court has declined to adjust the jury instruction further. *See Martinez*, 2002-NMCA-036, ¶ 38 ("We specifically decline[] to define what types of behavior will be sufficient to constitute a meaningful challenge to authority and what will not."). And based on the direction in *Jones* that the definition of "meaningful challenge to authority" is "best left to juries," 2000-NMCA-047, ¶ 14, this Court has affirmed numerous battery on a peace officer convictions involving facts similar to those presented today. *See, e.g., State v. Lucero*, A-1-CA-40447, mem. op. ¶¶ 4, 6 (N.M. Ct. App. July 26, 2022) (nonprecedential); *State v. Cooper*, A-1-CA-40159, mem. op. ¶¶ 5-6 (N.M. Ct. App. Apr. 29, 2022) (nonprecedential); *Loring*, A-1-CA-39607, mem. op. ¶¶ 4-7; *Quinn*, A-1-CA-38564, mem. op. ¶¶ 8-10.

**{16}** We therefore encourage our Supreme Court to advance the concepts developed in *Padilla* and *Jones* and to develop the jury instruction for battery on a peace officer beyond the mere phrase "meaningful challenge to authority" in order to better distinguish the line between merely rude and clearly felonious behavior. Otherwise, conduct that a jury may perceive to be relatively harmless will continue to be punished as severely as conduct it perceives to be harmful, or even injurious. Specifically, we suggest the jury instruction be revised to include "[l]anguage focusing on context" that directs the jury "to look to the surrounding circumstances to determine whether a battery is merely offensive in the ordinary civil sense, or whether it rises to the level of 'unnecessary danger' envisioned by . . . *Padilla*." *Jones*, 2000-NMCA-047, ¶ 10. Such an instruction should make clear that a "meaningful challenge to authority" is more than a "mere affront to [the officer's] personal dignity," *Padilla*, 1997-NMSC-022, ¶¶ 6-7, and that its reach must be beyond acts intending to "injure, insult[,] . . . provoke," or "embarrass the victim," as well as beyond "mere rude, insolent, or angry conduct." *Jones*, 2000-NMCA-047, ¶¶ 9, 13 (internal quotation marks and citation omitted).

## II.    The Evidence Was Sufficient to Support Defendant's Conviction

**{17}** Having declined to review the unpreserved and unraised issue of the legal sufficiency of jury instructions, we now address the three arguments raised by Defendant, beginning with the sufficiency of the evidence. Here, the jury instruction

required the jury to find beyond a reasonable doubt that "[D]efendant's conduct caused an actual threat to the safety of [Officer] Griffith or a meaningful challenge to the authority of [Officer] Griffith." Defendant challenges the sufficiency of evidence supporting the jury's finding that his act of spitting on Officer Griffith caused an actual threat or meaningfully challenged his authority. "In our determination of the sufficiency of the evidence, we are required to ensure that a rational jury could have found beyond a reasonable doubt the essential facts required for a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (emphasis, internal quotation marks, and citation omitted). Viewing the evidence in the light most favorable to the State, *see id.*, and acknowledging that we are governed by the jury instruction used at trial, we conclude this standard is met here. *See State v. Garcia*, 2021-NMSC-019, ¶¶ 22-24, 488 P.3d 585 (providing that appellate courts reviewing for sufficiency of the evidence consider the evidence in support of conviction under the provided jury instruction, even if erroneous, and not under a jury instruction that was not given to the jury).

{18} Defendant first argues that his spitting on Officer Griffith did not cause a meaningful challenge to Officer Griffith's authority because it did not rise above a "mere affront to [Officer] Griffith's personal dignity or an attempt to embarrass [Officer] Griffith." Defendant points out that Defendant was in handcuffs and surrounded by other officers when the spitting occurred and that Officer Griffith

largely ignored the conduct. As for whether Defendant's spitting caused an actual threat, Defendant bases his argument of insufficient evidence partially on Officer Griffith's behavior and perspective toward Defendant's actions, contending that Officer Griffith must not have considered the spit to be an actual threat to his health or safety because he did not follow standard protocol of seeking medical review after coming into contact with bodily fluid. Defendant also points out the height difference, apparent from the bodycam footage, between Officer Griffith and Defendant. In line with Defendant's interpretation of "meaningful challenge to authority," Defendant asserts that his actions did not impede Officer Griffith from arresting or restraining Defendant, or otherwise fulfilling his job duties. We, however, have rejected Defendant's request to adopt this definition of meaningful challenge to authority. And in line with our prior precedent, we conclude that by holding up Defendant's actions against the current jury instruction for battery on a peace officer, a jury could find that Defendant's actions amounted to a meaningful challenge to authority.[2]

{19} The evidence presented at trial indicated that police officers were responding to a call about a battery on a civilian individual, Ms. Fernandez. Additional evidence,

---

[2] Based on this conclusion, we need and therefore do not evaluate the alternative theory of whether Defendant's conduct caused an actual threat to the safety of Officer Griffith. *See State v. Olguin*, 1995-NMSC-077, ¶ 2, 120 N.M. 740, 906 P.2d 731 ("[D]ue process does not require a guilty verdict to be set aside if an alternative basis of conviction is only factually inadequate to support a conviction.").

in the form of bodycam footage, showed Defendant refusing to follow instructions from Officer Griffith and resisting Officer Griffith's attempts to restrain him. Despite this resistance, Officer Griffith eventually handcuffed Defendant. Other officers had to assist in restraining Defendant because of his efforts to resist arrest. Defendant yelled and spit in the direction of Officer Griffith while Officer Griffith and two other officers escorted Defendant to the police car. Once in the back of Officer Griffith's vehicle, Defendant continued to yell and spit several more times. From the evidence presented and in light of the jury instruction provided, a rational jury could conclude that Defendant's behavior meaningfully challenged Officer Griffith's authority. *See Jones*, 2000-NMCA-047, ¶¶ 14-15 (stating that whether conduct constituted a meaningful challenge depends on the context of the battery); *Martinez*, 2002-NMCA-036, ¶ 38 ("[I]t is up to the jury to decide whether the act of spitting also constituted a meaningful challenge to authority.").

**III.  Vouching**

{20}  Defendant next contends that the State improperly vouched for the credibility of its witnesses during closing argument. Particularly, Defendant takes issue with the following statements, spoken in regard to the testimony of the State's four witnesses: "Everyone's stories make sense in light of what everyone else said; that's because they're all telling the truth." Defense counsel objected, and out of earshot of the jury, the district court instructed the State to simply say that the evidence and

stories "corroborate each other," but not that "they're all telling the truth." Despite the district court's sustaining of his objection, Defendant contends that reversible error occurred because the district court did not strike the statements or instruct the jury to disregard them.

**{21}** "[I]t is the role of the jury to weigh the credibility of a witness." *State v. Sanchez*, 2015-NMCA-077, ¶ 19, 355 P.3d 51. "Prosecutors are permitted to comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion—and are not intended to incite the passion of the jury." *State v. Dominguez*, 2014-NMCA-064, ¶ 23, 327 P.3d 1092. Therefore, in trial, attorneys are not permitted to "state a personal opinion as to . . . the credibility of a witness." Rule 16-304(E) NMRA. Thus, while attorneys "have considerable latitude in closing arguments, [t]his latitude . . . is not boundless" and "does not encompass the practice of vouching for the credibility of a witness, either by invoking the authority and prestige of the prosecutor's office or by suggesting the prosecutor's special knowledge." *State v. Pennington*, 1993-NMCA-037, ¶ 27, 115 N.M. 372, 851 P.2d 494. Additionally, "[t]rial judges are afforded broad discretion in managing closing arguments because they are in the best position to assess the impact of allegedly improper statements by counsel." *Dominguez*, 2014-NMCA-064, ¶ 22. Defendant having preserved the issue by objecting to the State's statement, we "review for abuse of discretion and will only find reversible error in the most

exceptional circumstances." *Id.* (internal quotation marks and citation omitted). As part of our analysis, "[w]e review comments made in closing argument in the context in which they occurred so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Smith*, 2001-NMSC-004, ¶ 38, 130 N.M. 117, 19 P.3d 254 (internal quotation marks and citation omitted).

**{22}** The full context of the prosecutor's remarks is as follows: "Today you heard the testimony of four witnesses, you heard the 911 call, and you saw several videos. And all of these things corroborate one another. Everyone's stories make sense in light of what everyone else said. That's because they're all telling the truth." We view these comments as an argument that the witness testimonies were consistent with the other evidence presented to the jury—such as the 911 call, videos, and each other—not with specialized knowledge possessed only by the State. Nor do we see anything in the prosecutor's statements to suggest that she was invoking the authority and prestige of her office.

**{23}** Therefore, without the State's invoking the authority and prestige of her office or suggesting the State had special knowledge, there was no improper vouching and reversal is not warranted on this ground. *See Pennington*, 1993-NMCA-037, ¶¶ 24, 27, 29 (where prosecutor impermissibly referred to her ethical obligations and then vouched for the credibility of her witness). We briefly note, however, that even in light of our holding and of *Dominguez*'s holding that prosecutors "are permitted to

comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion," 2014-NMCA-064, ¶ 23, attorneys should be exceedingly leery in doing so. *See* Rule 16-304(E) (prohibiting attorneys from "stat[ing] a personal opinion as to . . . the credibility of a witness").

## IV.  Ineffective Assistance of Counsel

{24}    Defendant's third and final argument is that his counsel's failure to advise him about plea negotiations and offers from the State constituted ineffective assistance of counsel. "Claims of ineffective assistance of counsel are reviewed de novo." *Montoya*, 2015-NMSC-010, ¶ 57. "The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees defendants in criminal proceedings the right to effective assistance of counsel." *State v. Dyke*, 2020-NMCA-013, ¶ 30, 456 P.3d 1125 (alteration, omission, internal quotation marks, and citation omitted). We address claims of ineffective assistance of counsel under a two-part test derived from *Strickland v. Washington*, 466 U.S. 668 (1984). "In order to be entitled to relief on the basis of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *State v. Trammell*, 2016-NMSC-030, ¶ 16, 387 P.3d 220 (internal quotation marks and citation omitted).

{25}    Normally, "[i]n order to establish a prima facie case of ineffective assistance of counsel on appeal, [the d]efendant must demonstrate that [their] counsel's

performance fell below that of a reasonably competent attorney and that [they were] prejudiced by [their] counsel's deficient performance." *State v. Uribe-Vidal*, 2018-NMCA-008, ¶ 25, 409 P.3d 992 (internal quotation marks and citation omitted). With respect to claims of ineffective assistance of counsel resulting in a rejection of a plea agreement, this Court has applied the test set out by the United States Supreme Court in *Lafler v. Cooper*, 566 U.S. 156 (2012). *See State v. Cordova*, 2014-NMCA-081, ¶ 12, 331 P.3d 980. To establish a prima facie case under such circumstances,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* (quoting *Lafler*, 566 U.S. at 164). On this record, Defendant has failed to meet his burden.

**{26}** New Mexico Courts have expressed a preference that ineffective assistance of counsel claims "be adjudicated in habeas corpus proceedings, rather than on direct appeal." *Cordova*, 2014-NMCA-081, ¶ 7. "This preference stems from a concern that the record before the [district] court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Schoonmaker*, 2008-NMSC-010, ¶ 31, 143 N.M. 373, 176 P.3d 1105 (internal quotation marks and citation omitted), *overruled on other grounds by State v.*

*Consaul*, 2014-NMSC-030, ¶ 38, 332 P.3d 850. "Therefore, this Court will only remand a case for an evidentiary hearing if the record on appeal supports a prima facie case of ineffective assistance of counsel." *Cordova*, 2014-NMCA-081, ¶ 7.

{27} The dearth of evidence in the record regarding the specifics of a plea offer or plea negotiations perfectly exemplifies the reasons underlying New Mexico's preference for such claims to be brought through habeas proceedings. *See State v. Gomez*, 1991-NMCA-061, ¶¶ 10-11, 112 N.M. 313, 815 P.2d 166 (rejecting a defendant's request for remand because the defendant sought to develop a record that was lacking on direct appeal and reiterating that habeas corpus is the preferred remedy). Defendant provides no explanation of the factual basis underlying, nor does he provide record citations in support of, his claims of ineffective assistance. Without evidence in the record surrounding Defendant's claim, we cannot say that but for counsel's performance, there is a reasonable probability that "a plea [agreement] would have been presented to the [district] court," much less "that the court would have accepted [the plea agreement's] terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *See Cordova*, 2014-NMCA-081, ¶ 12 (internal quotation marks and citation omitted). In other words, the lack of factual development precludes this Court from concluding that Defendant has established a prima facie showing of ineffectiveness or prejudice, and we therefore

decline to remand this case to the district court for an evidentiary hearing. Under circumstances like these, habeas corpus is the appropriate avenue to develop such a record. Nothing in our determination prevents Defendant from pursuing a habeas corpus proceeding.

**CONCLUSION**

{28}   We affirm the jury verdict as to all three convictions.

{29}   **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Judge**

_____
**JANE B. YOHALEM, Judge**